HANSON BRIDGETT LLP
LINDA E. KLAMM, SBN 71506
lklamm@hansonbridgett.com
MILES C. HOLDEN, SBN 263342
mholden@hansonbridgett.com
425 Market Street, 26th Floor
San Francisco, California 94105
Telephone: (415) 777-3200
Facsimile: (415) 541-9366

Attorneys for Plaintiff MALCOLM
DRILLING COMPANY, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MALCOLM DRILLING COMPANY, INC., <br><br> Plaintiff, <br><br> v. <br><br> ILLINOIS UNION INSURANCE COMPANY, <br><br> Defendant. | CASE NO. <br><br> **MALCOLM DRILLING COMPANY, INC.'S COMPLAINT AGAINST ILLINOIS UNION INSURANCE COMPANY FOR: (1) DECLARATORY RELIEF – SATISFACTION OF SELF-INSURED RETENTION; (2) DECLARATORY RELIEF – DUTY TO PAY FOR "LEGAL DEFENSE EXPENSES"; (3) DECLARATORY RELIEF – DUTY TO INDEMNIFY MALCOLM FOR "PROFESSIONAL LOSS" AND/OR "LOSS" REGARDING THE ALLEGED POLLUTION CLAIMS AND/OR IN CONNECTION WITH SETTLEMENT OF THE ALLEGED POLLUTION CLAIMS; (4) BREACH OF CONTRACT; (5) BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING; AND (6) UNFAIR BUSINESS PRACTICES (VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200, ET SEQ.)** <br><br> **DEMAND FOR JURY TRIAL** |

10933739.1

## COMPLAINT

Plaintiff MALCOLM DRILLING COMPANY, INC. ("MALCOLM") hereby complains against Defendant ILLINOIS UNION INSURANCE COMPANY ("ACE") and alleges as follows:

## THE PARTIES

1.      MALCOLM is and was at all relevant times a corporation duly organized under the laws of California with its principal place of business in the City and County of San Francisco, California and at all relevant times was and is authorized to transact business in California.

2.      MALCOLM alleges on information and belief that ACE is and was at all times an insurer domiciled in Illinois with its principal place of business in Illinois that is and was at all relevant times authorized to transact business in California as an insurer.

## JURISDICTION

3.      This Court has jurisdiction under 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

4.      The amount in controversy includes, but is not limited to, the sums that MALCOLM contends ACE owes MALCOLM for "legal defense expenses", as that term is defined in the insurance policy at issue in this case, incurred in connection with claims against MALCOLM for alleged wrongful acts and alleged pollution conditions.

## VENUE

5.      Venue is proper in this District under 28 U.S.C. § 1391 because a substantial part of the alleged events and/or omissions giving right to the claims occurred here, including but not limited to the insurance policy at issue being entered into, negotiated, paid for, and delivered to MALCOLM here, and ACE breaching its obligations to pay sums owed to MALCOLM here.

MALCOLM DRILLING COMPANY, INC.'S COMPLAINT
AGAINST ILLINOIS UNION INSURANCE COMPANY

10933739.1

**INTRADISTRICT ASSIGNMENT**

6.    Pursuant to Local Rule 3-2, assignment of this case to the San Francisco Division or the Oakland Division is proper because the action arises in San Francisco County due to the insurance policy at issue being entered into, negotiated, paid for, and delivered to MALCOLM here, and ACE being obligated to provide coverage benefits to MALCOLM here.

**GENERAL ALLEGATIONS**

**I.    NATURE OF THE CLAIM AND RELIEF SOUGHT**

7.    This Complaint concerns insurance-coverage issues between MALCOLM and ACE arising out of claims for alleged wrongful acts and alleged pollution conditions (collectively, "Alleged Pollution Claims"), including but not limited to arbitration styled *Central Florida Equipment Rentals, Inc. v. Malcolm Drilling Company, Inc., et al.*; JAMS Reference No. 1460001403 ("CFER Arbitration").

8.    Upon being notified of the Alleged Pollution Claims, MALCOLM promptly tendered notice of the Alleged Pollution Claims to ACE and a claim for all available insurance coverage.

9.    Thereafter, in connection with its claim for insurance coverage, MALCOLM provided ACE with additional information about the Alleged Pollution Claims, including but not limited to the CFER Arbitration.

10.    ACE has failed to comply with its obligations to MALCOLM in connection with MALCOLM's tender of the Alleged Pollution Claims.

11.    MALCOLM now seeks declarations of rights, obligations, duties, and liability under the insurance policy issued by ACE.

12.    MALCOLM also seeks damages, fees, and costs against ACE for breaching the policy and the implied covenant of good faith and fair dealing by unreasonably taking coverage positions contrary to established insurance law and interpreting the policy in a manner so as to deny MALCOLM the coverage to which

10933739.1

- 2 -

1 | it is entitled.

2 |      13.    MALCOLM further seeks relief under California Business and

3 | Professions Code § 17200, et seq.

4 | **II.**    **THE UNDERLYING PROJECT AND USE OF THE MATERIAL**

5 |      14.    This insurance-coverage dispute arises out of a construction project

6 | commonly known as Brickell City Centre located in Miami, Florida ("Project").

7 |      15.    In or around July 2012, MALCOLM contracted with Turner

8 | Construction Company ("Turner") to perform, among other things, foundation-

9 | related engineering, land surveying, and other work at the Project, such as:

10 |        a.    designing and installing a deep soil mix ("DSM") plug below the

11 |                plan bottom of the excavation with perimeter sheet piling for the

12 |                composite wall system to facilitate "dry excavation";

13 |        b.    designing and installing augercast piling; and

14 |        c.    dewatering and excavating the site and loading/off-hauling

15 |                excavated materials and drill spoils from the DSM and augercast

16 |                piling work.

17 |      16.    In or around September 2012, MALCOLM subcontracted with Central

18 | Florida Equipment Rental, Inc. ("CFER") to perform, among other things,

19 | excavation and loading/off-hauling work on the Project.

20 |      17.    CFER arranged for relocating the excavated material from the Project

21 | ("Material") for the Odebrecht-CFER Joint Venture ("OCJV") to use as fill at a

22 | runway-expansion project at Fort Lauderdale-Hollywood International Airport in

23 | Broward County, Florida ("Airport") and for lake fill at a future development site at

24 | Biscayne Landing in North Miami, Florida ("Biscayne Landing").

25 | **III.**    **THE ALLEGED POLLUTION CLAIMS**

26 |      18.    The Miami-Dade County Department of Environmental Resources

27 | Management ("DERM") initially approved the Material for reuse as lake fill at

28 | Biscayne Landing.  But DERM then withdrew that approval on or about June 27,

10933739.1

1   2013, thus restricting reuse of the Material, after determining that aluminum in the

2   Material exceeded the allowable levels for surface water and groundwater and

3   qualified as "ground pollution" under the Miami-Dade County Code.

4           19.     Because of the alleged aluminum content in the Material, the following

5   claimants made the following additional Alleged Pollution Claims:

6                   a.      the City of North Miami demanded the removal of the Material

7                           from Biscayne Landing and rejected additional Material from

8                           being delivered to Biscayne Landing;

9                   b.      OCJV demanded the removal of the Material delivered to the

10                          Airport;

11                  c.      CFER asserted that it was precluded from handling and

12                          disposing of allegedly contaminated soil based upon a provision

13                          in the MALCOLM-CFER subcontract and CFER refused to

14                          handle any additional Material;

15                  d.      Turner demanded that MALCOLM immediately remove the

16                          Material from the Project and inform it of the details of

17                          MALCOLM's disposal plans; and

18                  e.      CFER commenced the CFER Arbitration against MALCOLM.

19  **IV.    THE INSURANCE POLICY**

20          20.     As relevant to this Complaint, ACE issued Global Contractors

21  Pollution Liability and Errors & Omissions Insurance Policy No. COO G27058024

22  002, effective December 31, 2012 to December 31, 2013 ("Policy").  A true and

23  correct copy of the Policy (with the premium amount redacted) is attached hereto as

24  **Exhibit A**, the contents of which MALCOLM incorporates herein by reference.

25          21.     The Policy contains an insuring agreement for "Errors & Omissions

26  Coverage" ("E&O Coverage") and another insuring agreement for "Contractors

27  Pollution and Emergency Response Coverage" ("Pollution Coverage").

28          22.     The Policy's insuring agreement for E&O Coverage provides:

10933739.1

The Insurer agrees to pay on behalf of the "insured", or in jurisdictions outside of the United States of America, the Insurer agrees to indemnify the relevant "insured" pursuant to Coverage C., below, for:

A.      ERRORS AND OMISSIONS COVERAGE (Coverage A.)

"Professional loss", in excess of the "self-insured retention", which the "insured" becomes legally obligated to pay because of "claims" arising out of an actual or alleged "wrongful act" in the performance of "covered professional services".

It is a condition precedent to coverage afforded pursuant to this Coverage A. that:

1.      The "claim" is first made against the "insured" and reported by the "insured" to the Insurer, in writing, during the "policy period" or "extended reporting period", if applicable, and

2.      The "wrongful act" which results in a "claim" arises out of the performance of "covered professional services" that first commence on or after the Retroactive Date, if any, identified in Item 3. of the Declarations and before the end of the "policy period".  If no Retroactive Date is identified in the Declarations, the "covered professional services" must first commence during the "policy period".

23.     The Policy's insuring agreement for Pollution Coverage provides:

The Insurer agrees to pay on behalf of the "insured", or in jurisdictions outside of the United States of America, the Insurer agrees to indemnify the relevant "insured" pursuant to Coverage C., below, for:

* * * * *

B.      CONTRACTORS POLLUTION AND EMERGENCY RESPONSE COVERAGE (Coverage B.)

1.      "Loss", in excess of the "self-insured retention", which the "insured" becomes legally obligated to pay because of a "claim"; and

2.      "Emergency response costs", in excess of the "self-insured retention",

arising out of a "pollution condition" resulting from "covered operations" or "transportation", provided the "claim" is first made, or the "insured" first discovers the "pollution condition" resulting in "emergency response costs", during the "policy period".

It is a condition precedent to coverage afforded pursuant to this Coverage B. that:

10933739.1

1.    The "covered operations" or "transportation" that result in the "claim" or "emergency response costs" first commence on or after the Retroactive Date, if any, identified in Item 3. of the Declarations and before the end of the "policy period". If no Retroactive Date is identified in the Declarations, the "covered professional services" must first commence during the "policy period"; and

2.    Any such:

    a.    "Claim" is reported by the "insured" to the Insurer, in writing, during the "policy period", or "extended reporting period", if applicable; or

    b.    Discovery of a "pollution condition" resulting in "emergency response" is reported by the "insured" to the Insurer during the "policy period["], but in no event later than seven (7) days following any such discovery by the "insured", or the expiration of the "policy period", whichever occurs first.

24.    The Policy defines terms that appear in quotations in the insuring agreements (and/or within those defined terms themselves) as follows:

- "Claim" means:

  [T]he assertion of a legal right received by an "insured" from a third-party, including, but not limited to, suits or other actions alleging responsibility or liability on the part of the "insured" for "professional loss" or "loss" arising out of:

  1.    An actual or alleged "wrongful act" in the performance of "covered professional services"; or

  2.    A "pollution condition" resulting from "covered operations" or "transportation",

  to which this insurance applies, respectively.

- "Covered operations" means "those operations specifically identified in Item 8.a. of the Declarations that are performed at a 'work site' by or on behalf of a 'named insured' or 'foreign subsidiary', including any attendant coordination, facilitation or effectuation of the disposal and/or recycling of waste materials generated from such operations at a 'non-owned disposal site'", which Item 8.a. of the Declarations list as "All drilling and related operations performed by or on behalf of the Named

- 6 -

10933739.1

Insured."

- "Covered professional services" means "those services that: 1. A 'named insured' or 'foreign subsidiary' is qualified to perform; and 2. Are specifically identified in Item 8.b. of the Declarations", which Item 8.b. of the Declarations list as "Professional services rendered by or on behalf of the named insured in the practices of engineering, architecture, and land surveying."

- "Insured" means (in part) "the 'first named insured'", which Item 1. of the Declarations lists as "Malcolm Drilling Company, Inc."

- "Legal defense expenses" means "reasonable legal costs, charges, and expenses, including expert charges incurred by the 'insured' in the investigation, adjustment, or defense of 'claims', 'foreign claims' or underlying matters upon which 'foreign subsidiary claims' are premised."

- "Loss" means "'bodily injury', 'property damage', and 'remediation costs', including any related 'legal defense expenses'."

- "Named Insured" means (in part) "the 'first named insured'", which Item 1. of the Declarations lists as "Malcolm Drilling Company, Inc."

- "Natural resource damage" means:

  [I]njury to, destruction of, or loss of, including the resulting loss of value of fish, wildlife, biota, land, air, water, groundwater, drinking water supplies, and other such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States of America (including the fishery conservation zone established by the Magnuson-Stevens Fishery Conservation and Management Act (16 U.S.C. § 1801 et. seq.)), any state, provincial or local government, any foreign government, or any First Nation or Native American Tribe, or, if such resources are subject to a trust restriction on expropriation or alienation , any members of any First Nation or Native American Tribe, including the reasonable costs of assessing such injury, destruction or loss resulting therefrom.

- "Non-owned disposal site" means:

  1. Any disposal site or recycling facility located within the

10933739.1

United States of America that has not at any time been owned or operated, in whole or in part, by any "insured" or "foreign subsidiary", which receives or has received waste resulting from "covered operations", provided that the disposal site or recycling facility:

    a.    Was properly licensed by federal and/or state regulators with applicable jurisdiction to accept wastes at the time of such disposal;

    b.    Was not owned or operated by any person, corporation or incorporated association that was in bankruptcy at the time the waste was received for disposal;

    c.    Has not, at any time prior to the inception date of this Policy, been identified on the United States EPA (CERCLA) National Priorities List or CERCLIS list, or pursuant to any functional equivalent of those listings made by a state regulatory agency pursuant to state law; and

    d.    Was not undergoing voluntary or regulatory-required remediation activities at the time the waste was received for disposal; and

    2.    Any disposal site or recycling facility that is specifically identified on a Schedule of Disposal Sites attached to this Policy, if any.

- "Policy period" means "the period identified in Item 2. of the Declarations, or any shorter period resulting from the cancellation of this Policy", which Item 2. of the Declarations lists as "December 31, 2012  12:01 A.M." to "December 31, 2013  12:01 A.M."

- "Pollution condition" means:

The discharge, dispersal, release, escape, migration, or seepage of any solid, liquid, gaseous or thermal irritant, contaminant or pollutant, including soil, sedimentation, silt, smoke, soot, vapors, fumes, acids, alkalis, chemicals, hazardous substances, hazardous materials, or waste materials, on, in, into, or upon land and structures thereupon , the atmosphere, surface water or groundwater.  For the purpose of this definition, waste materials includes, but is not limited to, "low-level radioactive waste", "mixed waste" and medical, infectious or pathological wastes.

- "Professional loss" means "monetary awards or settlements of compensatory damages, including any related 'legal defense expenses'."

- "Property damage" means (in part):

- 8 -

[A]ny of the following:

1. Physical injury to, or destruction of, tangible property owned by third-parties, including all resulting loss of use of that property;

2. Loss of use of tangible property owned by third-parties that is not physically injured or destroyed;

3. Diminished value of property owned by third-parties;

4. "Natural resource damages" . . . .

- "Remediation costs" means:

[R]easonable expenses incurred to investigate, quantify, monitor, mitigate, abate, remove, dispose, treat, neutralize, or immobilize "pollution conditions" to the extent required by applicable law. "Remediation costs" shall also include:

1. Reasonable legal cost, where such cost has been incurred by an "insured" or "foreign subsidiary" with the prior written consent of the Insurer; and

2. Reasonable expenses required to restore, repair or replace real or personal property, owned by third-parties, to substantially the same condition it was in prior to being damaged during the course of responding to a "pollution condition".

- "Self-insured retention" means "the dollar amount identified in Item 5. of the Declarations or as otherwise designated by endorsement, if any", which Item 5. of the Declarations lists as "$100,000 Per Wrongful Act or Pollution Condition".

- "Transportation" means:

[M]ovement via automobile, watercraft or rolling stock, by or on behalf of an "insured" or "foreign subsidiary", of waste derived from "covered operations" or materials reasonably related to "covered operations", including the loading and unloading of such waste or material, provided that such movement is:

1. Within the boundaries of a "work site";

2. To or from a "work site"; or

3. From a "work site" to any "non-owned disposal site".

- "Work site" means "a location where 'covered operations' are being

1  performed, including real property rented or leased by the 'named

2  insured' or 'foreign subsidiary' on a temporary basis for the purpose of

3  providing 'covered operations' for a client." "'Work site' does not

4  mean: 1. A 'non-owned disposal site'; or, 2. To the extent that Premises

5  Pollution Liability Coverage is added to the Policy by endorsement, a

6  'covered location'."

7  •  "Wrongful act" means "any act, error, omission, misstatement,

8  misleading statement or breach of duty actually or allegedly committed

9  or attempted while performing 'covered professional services' as

10  identified in Item 8.b. of the Declarations of this Policy", which Item

11  8.b. of the Declarations lists as "Professional services rendered by or on

12  behalf of the named insured in the practices of engineering,

13  architecture, and land surveying."

14  25.  The Policy provides at Section II.F.:

15  If the Insurer or an affiliate has issued claims-made and reported
based professional liability and/or pollution liability coverage to
16  the "insured" over successive policy periods, then all
"professional loss", "loss", "emergency response costs", and any
17  corresponding "foreign loss", "ownership loss" and "foreign
subsidiary loss", if any, resulting from multiple "claims",
18  "foreign claims" or "foreign subsidiary claims", which: arise out
of the same, continuous, repeated or related "wrongful act" or
19  "pollution condition"; and are reported to the Insurer over
multiple policy periods, shall be treated as a single "claim",
20  "foreign claim" or "foreign subsidiary claim" arising out of a
single "wrongful act" or "pollution condition" pursuant to a
21  single policy. Said "claim", "foreign claim" or "foreign
subsidiary claim" shall be subject to the Limits of Liability and
22  "self-insured retention" of the policy in effect at the time that the
"wrongful act" or "pollution condition" was first reported to the
23  Insurer, and no other policy shall respond.

24  26.  The Policy provides at Section III.D.: "'Legal defense expenses' reduce

25  the Limits of Liability identified in Item 4. of the Declarations and shall be applied

26  to the 'self-insured retention'."

27  27.  The Policy provides at Section IX.O.: "Where the consent of the

28  Insurer, or an "insured", is required pursuant to this Policy, such consent shall not be

- 10 -

10933739.1

1  unreasonably withheld, delayed, conditioned, or denied."

2      28.     The Policy contains a "Service of Suit Endorsement" at Endorsement

3  No. 009 that provides:

4          THIS ENDORSEMENT CHANGES THE POLICY. PLEASE
                      READ IT CAREFULLY.

5

6      Information about service of suits upon the company is given
       below. Service of process of suits against the company may be
7      made upon the following person, or another person the company
       may designate:

8              Saverio Rocca, Assistant General Counsel
               ACE USA Companies
9              436 Walnut Street
               Philadelphia, PA 19106-3703
10

11     The person named above is authorized and directed to accept
       service of process on the company's behalf in any action, suit or
       proceeding instituted against the company. If the insured
12     requests, the company will give the insured a written promise that
       a general appearance will be entered on the company's behalf if a
13     suit is brought.

14     If the insured requests, the company will submit to the
       jurisdiction of any court of competent jurisdiction. The company
15     will accept the final decision of that court or any Appellate Court
       in the event of an appeal.
16
       The law of some jurisdictions of the United States of America
17     require that the Superintendent, Commissioner or Director of
       Insurance (or their successor in office) be designated as the
18     company's agent for service of process. In these jurisdictions, the
       company designates the Director of Insurance as the company's
19     true and lawful attorney upon whom service of process on the
       company's behalf may be made. The company also authorizes
20     the Director of Insurance to mail process received on the
       company's behalf to the company person named above.
21
       If the insured is a resident of Canada, the insured may also serve
22     suit upon the company by serving the government official
       designated by the law of the insured's province.
23
           NOTHING HEREIN CONTAINED SHALL BE HELD TO
24     VARY, ALTER, WAIVE OR EXTEND ANY OF THE TERMS,
           CONDITIONS, OR LIMITATIONS OF THE POLICY TO
25     WHICH THIS ENDORSEMENT IS ATTACHED OTHER
                   THAN AS ABOVE STATED.
26

27     29.     MALCOLM timely tendered notice of and claim for the Alleged

28  Pollution Claims to ACE, and has satisfied all terms and conditions of the Policy

- 11 -

that apply to it, except to the extent that ACE prevented MALCOLM from performing and/or MALCOLM was excused from performing.

## V.   ACE'S WRONGFUL HANDLING OF MALCOLM'S CLAIM

30.    MALCOLM first tendered notice of and claim to ACE for insurance coverage in connection with the Alleged Pollution Claims to ACE on or about July 10, 2013.  ACE generated and sent a notification acknowledging receipt of MALCOLM's notice and claim the same day.

31.    ACE sent a letter to MALCOLM on or about August 23, 2013, requesting further information about the Alleged Pollution Claims.

32.    Thereafter, MALCOLM sent further information about the Alleged Pollution Claims to ACE, including on or about September 19, 2013 and October 7, 2013.

33.    ACE sent a letter to MALCOLM on or about November 11, 2013, stating: "This shall advise that we remain unable to approve reimbursement of the costs identified in the September 19, 2013 Basis for Claim and Cost Documentation since, as explained below, we do not find them to be covered costs under the Policy."; and "Notwithstanding the foregoing, the Insurer agrees that there may be some covered costs associated with this incident.  Your letter addresses a potential claim by CFE[R] against Malcolm to remove soils from the Ft. Lauderdale airport."

34.    MALCOLM, through counsel, argued to ACE on or about December 13, 2013, that in connection with the Alleged Pollution Claims, MALCOLM had satisfied the Policy's self-insured retention ("SIR") and was entitled to reimbursement from ACE.

35.    ACE, through counsel, wrote to counsel for MALCOLM on or about January 7, 2014, denying coverage for "Malcolm's costs associated with removing the stockpiled soils from the Brickell CityCentre Project site", and also stating: "While ILU [(ACE)] acknowledges that OCJV and CFE[R] may have asserted claims against Malcolm with respect to placing soils at the Biscayne site and the Ft.

10933739.1

1  Lauderdale airport, ILU continues to investigate this issue as discussed above."

2      36.      After MALCOLM informed ACE of the CFER Arbitration, ACE,

3  through counsel, wrote to a letter to counsel for MALCOLM on or about November

4  20, 2014 ("ROR Letter"), purporting to reserve certain rights and stating: "The

5  purpose of this letter is to advise that ILU [(ACE)] will provide Malcolm with a

6  defense in this matter."

7      37.      In the ROR Letter, ACE also stated:

8          ILU [(ACE)] was previously provided with various
           correspondence exchanged between CFER and Malcolm during
9          mid-2013.  Among these are letters from July 2013 in which
           CFER asserts a claim against Malcolm for the costs associated
10         with removing the soils from the Airport site.  ILU therefore
           agrees that for the purpose of triggering the Policy's Contractor's
11         Pollution Liability ("CPL") coverage, a claim was first made and
           reported to ILU during the period December 31, 2012 to
12         December 31, 2013.  Likewise, while ILU maintains its position
           that Malcolm was not performing "covered professional services"
13         in connection with the Project (see below), ILU acknowledges
           that prior correspondence from CFER contains many similar
14         allegations concerning Malcolm's soil mixing processes, such
           that to the extent that this matter can be considered a professional
15         liability claim, it was first made during the policy period.

16     38.      In response to the ROR Letter, MALCOLM, through counsel, wrote a

17  letter to counsel for ACE on or about January 22, 2015, enclosing 72 pages of

18  invoices for "legal defense expenses" incurred by MALCOLM in connection with

19  the Alleged Pollution Claims after MALCOLM's July 10, 2013 notice and claim to

20  ACE and exceeding the amount of the SIR.

21     39.      ACE, through counsel, wrote to a letter to counsel for MALCOLM on

22  or about February 9, 2015, stating: "ILU [(ACE)] does not agree that Malcolm has

23  yet fully and properly fulfilled its self-insured retention obligation."

24     40.      By improperly denying that MALCOLM has satisfied the SIR, ACE

25  has caused MALCOLM to bear the burden of "legal defense expenses" in

26  connection with the Alleged Pollution Claims in excess of the SIR without

27  agreement by ACE to reimburse MALCOLM for such "legal defense expenses".

28     41.      ACE's disclaimer of MALCOLM's satisfaction of the SIR and of

1  MALCOLM's entitlement to reimbursement of "legal defense expenses" already

2  incurred in connection with the Alleged Pollution Claims is in material breach of the

3  Policy and the implied covenant of good faith and fair dealing, and in violation of

4  California's unfair business practices law.

5  ### FIRST CAUSE OF ACTION

6  ### DECLARATORY RELIEF – SATISFACTION OF SELF-INSURED RETENTION (AGAINST ACE)

7

8      42.    MALCOLM realleges and incorporates by reference each and every

9  allegation set forth above in this Complaint.

10      43.    A dispute and actual, justiciable controversy has arisen and now exists

11  between MALCOLM and ACE concerning their respective rights, obligations,

12  duties, and liabilities under the Policy in connection with the Alleged Pollution

13  Claims.  MALCOLM asserts, and states on information and belief that ACE

14  disputes, among other things, that:

15          a.    Under the Policy, MALCOLM has satisfied the SIR through

16              MALCOLM incurring "legal defense expenses" and/or otherwise

17              in connection with the Alleged Pollution Claims; and

18          b.    ACE has breached its obligations to MALCOLM under the

19              Policy by wrongfully denying that MALCOLM satisfied the SIR

20              through MALCOLM incurring "legal defense expenses" and/or

21              otherwise in connection with the Alleged Pollution Claims.

22      44.    MALCOLM desires a judicial determination and declaration of the

23  parties' respective rights, obligation, duties, and liabilities under the Policy in

24  connection with the Alleged Pollution Claims.

25      45.    Declaratory relief is appropriate and necessary at this time so that the

26  parties may ascertain their respective rights, obligations, duties, and liabilities under

27  the Policy in connection with the Alleged Pollution Claims.

28  //

## SECOND CAUSE OF ACTION

### DECLARATORY RELIEF – DUTY TO PAY FOR "LEGAL DEFENSE EXPENSES" (AGAINST ACE)

46.    MALCOLM realleges and incorporates by reference each and every allegation set forth above in this Complaint.

47.    A dispute and actual, justiciable controversy has arisen and now exists between MALCOLM and ACE concerning their respective rights, obligations, duties, and liabilities under the Policy in connection with the Alleged Pollution Claims.  MALCOLM asserts, and states on information and belief that ACE disputes, among other things, that:

      a.   Under the Policy, ACE was and is obligated to comply with ACE's present and immediate duty to pay for MALCOLM's "legal defense expenses" incurred in connection with the Alleged Pollution Claims upon MALCOLM's satisfaction of the SIR; and

      b.   ACE has breached that obligation by wrongfully denying that ACE has a present and immediate duty to pay for MALCOLM's "legal defense expenses" incurred in connection with the Alleged Pollution Claims.

48.    MALCOLM desires a judicial determination and declaration of the parties' respective rights, obligation, duties, and liabilities under the Policy in connection with the Alleged Pollution Claims.

49.    Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the Policy in connection with the Alleged Pollution Claims.

//

//

//

//

## THIRD CAUSE OF ACTION

### DECLARATORY RELIEF – DUTY TO INDEMNIFY MALCOLM FOR "PROFESSIONAL LOSS" AND/OR "LOSS" REGARDING THE ALLEGED POLLUTION CLAIMS AND/OR IN CONNECTION WITH SETTLEMENT OF THE ALLEGED POLLUTION CLAIMS (AGAINST ACE)

50.     MALCOLM realleges and incorporates by reference each and every allegation set forth above in this Complaint.

51.     A dispute and actual, justiciable controversy has arisen and now exists between MALCOLM and ACE concerning their respective rights, obligations, duties, and liabilities under the Policy in connection with the Alleged Pollution Claims.  MALCOLM asserts, and states on information and belief that ACE disputes, among other things, that under the Policy, ACE is obligated to indemnify MALCOLM for certain "professional loss" and/or "loss" regarding the Alleged Pollution Claims and/or in connection with settlement of the Alleged Pollution Claims.

52.     MALCOLM desires a judicial determination and declaration of the parties' respective rights, obligation, duties, and liabilities under the Policy in connection with the Alleged Pollution Claims.

53.     Declaratory relief is appropriate and necessary at this time so that the parties may ascertain their respective rights, obligations, duties, and liabilities under the Policy in connection with the Alleged Pollution Claims.

## FOURTH CAUSE OF ACTION

### BREACH OF CONTRACT (AGAINST ACE)

54.     MALCOLM realleges and incorporates by reference each and every allegation set forth above in this Complaint.

55.     The Policy is a valid and enforceable written contract (though not all provisions of the Policy are valid and enforceable) that affords MALCOLM insurance coverage for the Alleged Pollution Claims.

56.     MALCOLM has made written demands that ACE acknowledge its

10933739.1

1  obligations to provide coverage under the Policy in connection with the Alleged

2  Pollution Claims and that ACE pay for "legal defense expenses" and other

3  "professional loss" and/or "loss" in connection with the Alleged Pollution Claims.

4        57.    MALCOLM has satisfied all terms and conditions of the Policy that

5  apply to it, except to the extent ACE prevented MALCOLM from performing under

6  the Policy and/or MALCOLM was excused from performing under the Policy.

7        58.    Though acknowledging its duty and agreeing to pay for some "legal

8  defense expenses" incurred by MALCOLM in connection with the CFER

9  Arbitration upon MALCOLM's satisfaction of the SIR, ACE has breached the

10  Policy by, among other things, wrongfully:

11            a.    Denying that MALCOLM satisfied the SIR;

12            b.    Not honoring its obligation to promptly pay MALCOLM's "legal

13                  defense expenses" as they are incurred;

14            c.    Asserting that it is not required to pay for certain "legal defense

15                  expenses" and other "professional loss" and/or "loss" in

16                  connection with the Alleged Pollution Claims;

17            d.    Denying MALCOLM the right to benefits to which MALCOLM

18                  is entitled under the Policy; and

19            e.    Taking coverage positions contrary to controlling law.

20        59.    By breaching the Policy, ACE waived its rights under the Policy.

21        60.    As a direct and proximate result of ACE's breaches, MALCOLM has

22  been damaged in an amount to be proven at trial.

23  **FIFTH CAUSE OF ACTION**

24  **BREACH OF THE IMPLIED COVENANT OF GOOD
   FAITH AND FAIR DEALING (AGAINST ACE)**

25

26        61.    MALCOLM realleges and incorporates by reference each and every

27  allegation set forth above in this Complaint.

28        62.    The Policy contains an implied covenant of good faith and fair dealing

10933739.1

- 17 -

1 under which ACE agreed not to take any action that would deprive MALCOLM of

2 MALCOLM's rights and benefits under the Policy.

3      63.    ACE has breached this implied covenant of good faith and fair dealing

4 by engaging in a course of conduct intentionally designed to deprive MALCOLM of

5 MALCOLM's rights and benefits under the Policy.

6      64.    ACE breached the implied covenant of good faith and fair dealing by

7 asserting unreasonable interpretations of the Policy with the intention of depriving

8 MALCOLM of rights and benefits due to MALCOLM under the Policy.  ACE's

9 breaches of the implied covenant of good faith and fair dealing include, but are not

10 limited to intentionally, wrongfully, and maliciously:

11          a.    Denying that MALCOLM satisfied the SIR;

12          b.    Not honoring its obligation to promptly pay MALCOLM's "legal

13                defense expenses" as they are incurred;

14          c.    Asserting that it is not required to pay for certain "legal defense

15                expenses" and other "professional loss" and/or "loss" in

16                connection with the Alleged Pollution Claims;

17          d.    Basing its claims-handling decisions on the desire to reduce or

18                avoid its obligations to MALCOLM;

19          e.    Preferring its own interests over the interests of MALCOLM;

20          f.    Denying MALCOLM the right to benefits to which MALCOLM

21                is entitled under the Policy, with the intention of coercing

22                MALCOLM to forgo these rights and benefits; and

23          g.    Taking coverage positions contrary to controlling law.

24      65.    By breaching the implied covenant of good faith and fair dealing, ACE

25 waived its rights under the Policy.

26      66.    As a direct and proximate result of ACE's breaches of the implied

27 covenant of good faith and fair dealing, MALCOLM has been damaged in an

28 amount to be proven at trial.

- 18 -

67.     As a direct and proximate result of ACE's breaches of the implied covenant of good faith and fair dealing, MALCOLM is entitled to recover its attorneys' fees and costs incurred in establishing its rights to obtain benefits under the Policy.

## SIXTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES (VIOLATION OF CALIFORNIA BUS. & PROF. CODE § 17200, ET SEQ.) (AGAINST ACE)

68.     MALCOLM realleges and incorporates by reference each and every allegation set forth about in this Complaint.

69.     MALCOLM alleges on information and belief that ACE has engaged in unlawful, unfair, wrongful, and/or fraudulent business practices, including with respect to MALCOLM's claims to ACE under the Policy in connection with the Alleged Pollution Claims.  Such practices include but are not limited to the acts and omissions set forth above, as well as violations of California Insurance Code § 790.03(h), such as knowingly committing or performing with such frequency as to indicate a general business practice the following unfair claims and settlement practices:

      a.    Misrepresenting to claimants pertinent facts or insurance policy provisions relating to any coverages at issue;

      b.    Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;

      c.    Failing to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under insurance policies;

      d.    Failing to affirm or deny coverage of claims within a reasonable time after proof of loss requirements have been completed and submitted by the insured; and

e.    Failing to provide promptly a reasonable explanation of the basis relied on in the insurance policy, in relation to the facts or applicable law, for the denial of a claim or for the offer of a compromise settlement.

ACE's unlawful, unfair, wrongful, and/or fraudulent business practices set forth above in this paragraph and throughout this Complaint, including the fourth and fifth causes of action were and are unfair business practices in violation of California Business and Professions Code § 17200, et seq., and California common law.  (*See, e.g., Zhang v. Superior Court* (2013) 57 Cal.4th 364.)

70.    As a direct and proximate result of ACE's unlawful, unfair, wrongful, and/or fraudulent business practices, MALCOLM has suffered and will continue to suffer substantial damage and irreparable injury.  As such, MALCOLM is entitled to temporary, preliminary, and permanent injunctive relief against ACE and its unlawful, unfair, wrongful, and/or fraudulent business practices, as well as restitution and attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, MALCOLM prays for relief as follows:

1.    As to the first cause of action, a declaration that:

a.    Under the Policy, MALCOLM has satisfied the SIR through MALCOLM incurring "legal defense expenses" and/or otherwise in connection with the Alleged Pollution Claims; and

b.    ACE has breached its obligations to MALCOLM under the Policy by wrongfully denying that MALCOLM satisfied the SIR through MALCOLM incurring "legal defense expenses" and/or otherwise in connection with the Alleged Pollution Claims;

2.    As to the second cause of action, a declaration that:

a.    Under the Policy, ACE was and is obligated to comply with ACE's present and immediate duty to pay for MALCOLM's

1    "legal defense expenses" incurred in connection with the Alleged

2    Pollution Claims upon MALCOLM's satisfaction of the SIR; and

3    b.    ACE has breached that obligation by wrongfully denying that

4    ACE has a present and immediate duty to pay for MALCOLM's

5    "legal defense expenses" incurred in connection with the Alleged

6    Pollution Claims;

7    3.    As to the third cause of action, a declaration that under the Policy, ACE

8    is obligated to indemnify MALCOLM for certain "professional loss" and/or "loss"

9    regarding the Alleged Pollution Claims and/or in connection with settlement of the

10   Alleged Pollution Claims;

11   4.    As to the fourth cause of action, general, consequential, and

12   compensatory damages according to proof;

13   5.    As to the fifth cause of action, attorneys' fees, costs, and consequential

14   damages according to proof;

15   6.    As to the sixth cause of action, temporary, preliminary and permanent

16   injunctive relief, as well as restitution and attorneys' fees;

17   7.    Pre-judgment interest according to proof;

18   8.    Costs of suit and attorneys' fees according to proof;

19   9.    Punitive damages according to proof; and

20   10.    Such other and further relief as the Court may deem just and proper.

21                              Respectfully submitted,

22   DATED: March 4. 2015            HANSON BRIDGETT LLP

23

24                         By:_____/s/ Miles C. Holden_____

25                              LINDA E. KLAMM
                              MILES C. HOLDEN
                              Attorneys for Plaintiff MALCOLM

26                              DRILLING COMPANY. INC.

27

28

10933739.1

- 21 -

**<u>JURY DEMAND</u>**

MALCOLM DRILLING COMPANY, INC. hereby demands a jury trial.

Respectfully submitted,

DATED: March 4. 2015                HANSON BRIDGETT LLP


By:_____/s/ Miles C. Holden_____
LINDA E. KLAMM
MILES C. HOLDEN
Attorneys for Plaintiff MALCOLM
DRILLING COMPANY. INC.

MALCOLM DRILLING COMPANY, INC.'S COMPLAINT
AGAINST ILLINOIS UNION INSURANCE COMPANY

10933739.1